IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

92-2747

_____

UNITED STATES OF AMERICA                    Plaintiff-Appellant

      versus

JAMES DANIEL BESZBORN, ET AL              Defendants-Appellees

_____

Appeal from the United States District Court
for the Southern District of Texas
(CR-H-90-343-1,2,3,4 & 5)
_____
(April 18, 1994)

Before GARWOOD and BARKSDALE, Circuit Judges, and SHAW*, District
Judge.

SHAW, District Judge:**

### **O P I N I O N**

The Government appeals the district court's decision granting
defendants' motions and dismissing the indictment on the basis of
pre-indictment delay and double jeopardy.  We reverse and remand.

### **Facts and Proceedings Below**

The Government charged five defendants, James Daniel Beszborn,

Joseph Westmoreland, James Purdom, Michael Blanchard, and Martin

_____

*Chief District Judge of the Western District of Louisiana, sitting
 by designation.

** Local Rule 47.5 provides:  "The publication of opinions that
have no precedentail value and merely decide particular cases on
the basis of well-settled principles of law imposes needless
expense on the public and burdens on the legal profession.
"Pursuant to that Rule, the Court has determined that this opinion
should not be published.

Schehin with participating in a scheme to defraud First Universal Savings, Meridian Savings Association, the Federal Savings and Loan Insurance Corporation (FSLIC), the Federal Home Loan Bank Board (FHLBB), and the Internal Revenue Service (IRS) through a series of transactions made in connection with the purchase and development of several parcels of real estate.

The facts which form the basis of the indictments involve a complex series of transactions involving First Universal Savings (Universal), a federally-insured savings and loan association; First Universal Service Corporation (FUSC), a wholly-owned subsidiary of Universal, which was created to participate in real estate development ventures; Penn West, a general partnership owned by Gary Pentecost, an unindicted co-conspirator, and Westmoreland; First National Trust (FNT), a real estate development company, and Meridian Savings Association (Meridian), another federally-insured savings and loan association. Schehin, Purdom, and Blanchard were officers, directors, and shareholders of Universal. Schehin was the president of FUSC. Beszborn and Westmoreland were part-owners of FNT. The alleged scheme involved the fraudulent acquisition of financing by FNT through Universal and Meridian.

Initially, on September 17, 1990, a grand jury indicted defendants-appellees, James Daniel Beszborn and Joseph Westmoreland on four counts involving conspiracy, bank fraud, and tax evasion. On August 22, 1991, the Government filed a superseding indictment, adding as defendants, James Purdom, Michael Blanchard, and Martin Schehin. The indictment charged Beszborn,

2

Westmoreland, Purdom, Blanchard, and Schehin with conspiracy, false entry, misapplication of funds, and bank fraud.

On September 27, 1991, Schehin moved to dismiss two counts of the indictment asserting that they were barred by the applicable statute of limitation. Purdom and Schehin filed a motion to dismiss due to pre-indictment delay, and all defendants moved to adopt and incorporate each of their co-defendants' motions.

After a hearing on the defendants' motions to dismiss, the district judge denied the motions without reasons.

Shortly thereafter, Schehin and Purdom filed special pleas of jeopardy, and Beszborn and Westmoreland filed motions to dismiss based upon double jeopardy. The court took these motions under advisement.

On June 24, 1992, the Government filed a second superseding indictment charging the defendants in twelve counts with various crimes, including conspiracy, bank fraud, misapplication of funds, false statements, and tax evasion.

On July 15, 1992, Purdom and Schehin amended and refiled their earlier motion to dismiss the indictment due to pre-indictment delay and Schehin filed a motion to dismiss on the basis of double jeopardy.

On August 28, 1992, the district court dismissed the indictment, granting all of the defendants' motions, including (1) Purdom's and Schehin's motion to dismiss due to pre-indictment delay; (2) Schehin's special plea of jeopardy; (3) Purdom's special plea of jeopardy; (4) Beszborn's motion to dismiss for double

3

jeopardy; (5) Westmoreland's motion to dismiss for double jeopardy; and (6) Schehin's motion to dismiss for double jeopardy. This appeal resulted.

## **Discussion**

### **I.   Pre-Indictment Delay**

The Government contends that the district court erred as a matter of law when it misapplied the standard for evaluating a due process claim. The Government argues that the district court presumed prejudice from the pre-indictment delay, relieving the defendants of their burden of proving actual prejudice, necessary for a due process violation.

While the Sixth Amendment guarantees a criminal defendant a right to a speedy trial post indictment, the Supreme Court has held that the Due Process Clause of the Fifth Amendment protects an accused against pre-indictment delay. United States v. Lovasco, 431 U.S. 783, 97 S. Ct. 2044, 52 L.Ed.2d 752 (1977); United States v. Marion, 404 U.S. 307, 92 S. Ct. 455, 30 L.Ed.2d 468 (1971).

The burden of proving a due process violation due to pre-indictment delay is on the defendant, who must prove that (1) the prosecutor intentionally delayed the indictment to gain a tactical advantage, and (2) the defendant incurred actual prejudice as a result of the delay. United States v. Amuny, 767 F.2d 1113 (5th Cir. 1985).

The Government contends that the district court, in dismissing the indictment for pre-indictment delay, did not apply the proper

4

standard in evaluating a due process claim, and did not make a finding of actual prejudice. In its order, the district court reviewed a list of five potentially material witnesses who have died since the acts which formed the basis of the indictment occurred. The court stated that documents have moved and it is virtually impossible to re-create the circumstances surrounding the alleged transactions. Apparently, being unable to make a finding of actual prejudice, the district court relied on the case of Doggett v. United States, _____ U. S. _____, 112 S. Ct. 2686, 120 L.Ed.2d 520 (1992), in dismissing the indictment on a finding of presumptive prejudice, holding that the defendants should not be penalized because they are unable to show actual prejudice. The district court quotes extensively from Doggett stating, "excessive delay presumptively compromises the reliability of a trial" and "affirmative proof of particularized prejudice is not essential to every speedy trial claim...."

The law is well settled that it is actual prejudice, not possible or presumed prejudice, which is required to support a due process claim. The applicable statute of limitations is the mechanism established by law to guard against possible, as distinguished from actual, prejudice resulting from the passage of time between crime and the charge, protecting a defendant from overly stale criminal charges. United States v. Ewell, 383 U.S. 116, 86 S. Ct. 773, 15 L.Ed.2d 627 (1966), United States v. Marion, 404 U.S. 307, 92 S. Ct. 455, 30 L.Ed.2d 468 (1971).

The concept of presumed prejudice has no place in a due process analysis, and the district court's reliance on Doggett is misplaced. Doggett was a case involving a Sixth Amendment speedy trial violation claim, due to post-indictment delay, rather than pre-indictment delay. The proper measure of a claim of prejudice due to pre-indictment delay is the due process standard of the Fifth Amendment, which requires a showing of actual prejudice. Without proof of actual prejudice resulting from the delay, a due process claim is merely speculative and cannot be maintained.

The Supreme Court was clear in its directive that, "There is no need to...guard against mere possibility that...delays will prejudice the defense...since statutes of limitation already perform that function." United States v. Marion, 404 U.S. 307, 92 S. Ct. 455, 30 L.Ed.2d 468 (1971). The law is well settled--the Due Process Clause of the Fifth Amendment requires dismissal of an indictment if it is shown that the pre-indictment delay caused actual prejudice to the accused and that the Government intentionally delayed the indictment to gain a tactical advantage.

Assuming the district court applied the proper standard for a due process claim, requiring proof of actual prejudice, this court must review the record to determine whether the record supports a finding of actual prejudice.

As a general rule, this court reviews the district court's findings of fact for clear error and reviews its conclusions of law de novo. Colonial Penn Ins. Co. v. Market Planners Ins. Agency,

<u>Inc.</u>, 1 F.3d 374 (5th Cir. 1993). A finding of prejudice involves a mixed question of law and fact.

This court has applied a clearly erroneous standard to similar mixed questions of law and fact under the Fifth Amendment. <u>United States v. Gibson</u>, 963 F.2d 708 (5th Cir. 1992); <u>United States v. Bourgeois</u>, 950 F.2d 980 (5th Cir. 1992).

The district court relied upon the death or relocation of potentially material witnesses and the movement and misplacement of several documents in its finding of apparent prejudice, without an actual showing of prejudice by defendants.

The deceased witnesses were merely potentially material to the defense in this case. There was no evidence that the testimony of any of these witnesses was exculpatory in nature, or that it would have actually aided the defense. Although the district court stated that documents have been moved numerous times and it is virtually impossible to re-create the circumstances surrounding the alleged transactions, there is no evidence that the information to be derived from these documents could not otherwise be obtained from other sources. Vague assertions of lost witnesses, faded memories, or misplaced documents are insufficient to establish a due process violation from pre-indictment delay. <u>United States v. Harrison</u>, 918 F.2d 469 (5th Cir. 1990); <u>United States v. Ballard</u>, 779 F.2d 287 (5th Cir. 1986).

Therefore, the court having misapplied the standard in a due process claim and the defendants having failed to meet their burden

of proof of actual prejudice, the district court erred when it dismissed the indictment due to pre-indictment delay.[1]

## II.   Double Jeopardy

The Government asserts that the court erred when it granted the defendants' motions to dismiss based upon double jeopardy.

On May 20, 1988, prior to the Government's indictments against Beszborn, Westmoreland, Purdom, Blanchard, and Schehin, Universal Savings Association and First Universal Service Corporation filed a civil complaint against Beszborn, Westmoreland, Schehin, Pentecost, Westland Realty, Houston Storage, Inc., First National Trust Company, Penn West, Progressive Interest and Development Corp., and David Carpenter for RICO violations, civil conspiracy, breach of fiduciary duties, common law fraud, state statutory fraud, negligence, breach of contract, and unjust enrichment. In May, 1990, the Resolution Trust Corporation (RTC), as conservator/receiver of Universal Savings Association, was substituted as a plaintiff in place of Universal to proceed to trial. At trial, the plaintiffs sought punitive damages against Gary Pentecost, David Carpenter, Houston Storage, Inc., Penn West, and First National Trust Company. No issue of punitive damages was submitted to the jury as to Beszborn, Westmoreland, Purdom, Schehin, or Blanchard, individually.

---

[1]This court need not reach the issue of whether the Government intentionally delayed the indictment to gain a tactical advantage, because the defendants did not meet their threshold burden that they suffered actual prejudice.

The defendants argued that because the RTC is a government entity, and the Government has sought and was awarded punitive damages by the jury against entities in which the defendants have an interest, the Double Jeopardy Clause has been violated. The district court agreed and dismissed the indictment.

The Double Jeopardy Clause affords a trio of protections to a criminal defendant: (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second criminal prosecution for the same offense after conviction, and (3) protection against multiple punishment for the same offense imposed in a single proceeding. United States v. Sanchez-Escareno, 950 F.2d 193 (5th Cir. 1991).

The third prong of protections, the multiple punishment prong, afforded by the Double Jeopardy Clause has been expanded by the Supreme Court, which held that a civil fine imposed in addition to a criminal prosecution, may trigger double jeopardy protection if that fine is punitive in nature and aimed at the same conduct. United States v. Halper, 490 U.S. 435, 109 S. Ct. 1892, 104 L.Ed.2d 487 (1989). It is this expanded protection which the defendants claim affords them protection from the criminal prosecution. This court must disagree.

The rationale behind the protection of the Double Jeopardy Clause rests upon the doctrine that the Government or the sovereign with all of its power should not be allowed to make repeated attempts to convict an individual for an alleged offense, or

9

subject him to multiple punishments. It is the conduct or actions of the Government which the Double Jeopardy Clause seeks to limit.

In order for the Double Jeopardy Clause to have any application, there must be actions by a sovereign, which place an individual twice in jeopardy. The Double Jeopardy Clause does not apply to actions involving private individuals. Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 109 S. Ct. 2909, 106 L.Ed.2d 219 (1989); Hansen v. Johns-Manville Products Corporation, 734 F.2d 1036 (5th Cir. 1984); Breed v. Jones, 421 U.S. 519, 95 S. Ct. 1779, 44 L.Ed.2d 346 (1975).

The RTC is an entity created by the Federal Government to handle the affairs of a failed financial institution. Although the RTC was created by the Government, it has a non-governmental function in the initial stages of reorganization of a financial institution. The RTC became a party to the civil action initiated by the Universal Savings Association when the bank began suffering from financial problems. The RTC took over the operations of the bank in its capacity as receiver or conservator.

It is well settled in the law that the RTC may function in a corporate or regulatory capacity or in a capacity as receiver. The separateness of these dual identities has been well recognized in this circuit and others. The RTC as receiver of an insolvent financial institution stands in the shoes of the bank assuming all debts of the bank. FDIC v. Wheat, 970 F.2d 124 (5th Cir. 1992); Texas American Bancshares, Inc. v. Clarke, 954 F.2d 329 (5th Cir. 1992); Landry v. 1984, 486 F.2d 139 (3rd Cir. 1973); FDIC v.

10

Glickman, 450 F.2d 416 (9th Cir. 1971); Downriver Community Federal Credit Union v. Penn Square Bank, 879 F.2d 754 (10th Cir. 1989); FDIC v. Harrison, 735 F.2d 408 (11th Cir. 1984).

The uniqueness of the RTC's role as receiver, rather than as a governmental entity, becomes quite evident in its pursuits. When the RTC pursues an action in its capacity as a receiver, it is not represented by the United States Attorney but instead by private attorneys. The proceeds derived from the successful actions of the RTC, in its receiver capacity, benefit the creditors and stockholders of the failed institution which it represents, and do not go to the United States Treasury. This unique role of the RTC was created to aid in the management of a failed institution prior to its complete sale and dissolution. The Government does not benefit from the judgment entered by the court in favor of the RTC as receiver but instead, the proceeds benefit all stockholders and creditors of the bank.

The unique non-governmental role of the RTC as receiver has become quite essential in the management of failed financial institutions. In its capacity as receiver, the RTC stands as a private, non-governmental entity, and is not the Government for purpose of the Double Jeopardy Clause.

Accordingly, because the RTC assumed the litigation for Universal in its private, non-governmental capacity as receiver, the suit was purely an action between private individuals. Therefore, because no damage award was pursued or imposed by the Government, the Double Jeopardy Clause has not been implicated or

11

violated. The subsequent criminal prosecution by the United States does not violate the Double Jeopardy Clause of the Fifth Amendment, and the district court erred in its finding of such a violation.

## III. Single Overarching Conspiracy

The final point of error asserted by the Government involves the court's dismissal of the indictment against Purdom and Schehin on the basis that a prior prosecution of these defendants for conspiracy to defraud the United States by impeding or obstructing the IRS's collection of 1984 income taxes (H-90-438), bars prosecution of these same defendants in the subsequent indictment for conspiracy in the case sub judice. (H-90-343-SS). The district court found a single overarching conspiracy encompassing both indictments, and accordingly found that the Double Jeopardy Clause had been violated. The court also found that the principle of collateral estoppel bars the subsequent prosecution of the defendants by the Government.

Prior to the indictment sub judice, Schehin and Purdom, along with other defendants, were charged with conspiracy and tax evasion (H-90-438). The conspiracy in H-90-438 involved seven individuals, including Schehin and Purdom, who devised a scheme to funnel money into Texas City Joint Venture (TCJV) and later called the distributions from that corporation "loans" to avoid paying taxes. The events and transactions which form the basis of the indictment occurred in 1984 and 1985. In short, the defendants contracted to purchase eighty-nine acres of land in Texas City in July, 1984, but in November, 1984, TCJV actually conducted the purchase. TCJV

12

temporarily took title and flipped the property to another investment group, making a profit of $887,864.21. The money was placed in the TCJV checking account and was treated as a loan. No taxes were paid on this income.

In order to prove a violation of double jeopardy, the defendants have the burden of demonstrating that the two conspiracies charged are actually one overarching conspiracy. United States v. Henry, 661 F.2d 894 (5th Cir. 1981), cert. denied, 102 S. Ct. 1614 (1982). Once the defendant makes out a prima facie double jeopardy claim, the burden shifts to the Government to prove that separate offenses are charged. United States v. Strickland, 591 F.2d 1112 (5th Cir. 1979) cert. denied, 100 S. Ct. 449 (1979); United States v. Nichols, 741 F.2d 767 (5th Cir. 1984), cert. denied, 105 S. Ct. 1186 (1985).

To determine whether the Double Jeopardy Clause has been violated by a successive conspiracy prosecution, the district court must review the entire record in view of five factors: (1) time, (2) persons acting as co-conspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the Government or any other description of the offense charged which indicates the nature and scope of the activity which the Government sought to punish in each case, and (5) places where the events alleged as part of the conspiracy took place. United States v. Marable, 578 F.2d 151 (5th Cir. 1978).

13

In examining the five factors as applied to the facts of this case, it is evident that the two charged conspiracies do overlap in time. However, such a factor alone is not dispositive. The co-conspirators are not the same except for Purdom and Schehin. The activities of Purdom and Schehin in each of these conspiracies were similar in some respects involving the arrangement of funds as earnest money and the transfer of funds for purchases, but were different in object and scope.

The statutory offenses charged and the overt acts in the conspiracies negate a finding of a single overarching conspiracy. Factually, the objects of the two conspiracies are different and the manners in which the defendants sought to pursue their goals were separate and distinct. Additionally, there were completely separate transactions in each charged conspiracy which further support the conclusion that separate conspiracies, rather than one overarching conspiracy existed.

The examination of the conspiracies in light of the five factors does not support a finding of a single conspiracy, and the district court's finding of such, and dismissing the indictment on that basis, is in error.

Along with its finding of one overarching conspiracy encompassing the two indictments, the district court found that the jury's verdict acquitting Schehin and Purdom of fraudulently obtaining money and cheating on their taxes, which required a finding of guilt for merely counselling, inducing or procuring the commission of a crime, required the jury to necessarily find that

14

Purdom and Schehin did not have the intent to defraud. Accordingly, the court found that the Government was collaterally estopped from relitigating the issue of intent in any subsequent prosecution.

The doctrine of collateral estoppel bars relitigation of issues of ultimate fact which have already been determined by a valid and final judgment. Ashe v. Swenson, 397 U.S. 436, 90 S. Ct. 1189, 25 L.Ed.2d 469 (1970).

This court did not find that there was one overarching conspiracy encompassing the two indictments, and accordingly must examine the issue of intent as to both indictments to determine whether a finding of no intent to defraud in one indictment necessarily requires a similar finding in the other indictment.

The defendants have failed to prove that the jury's acquittal was based upon a finding of a lack of intent to defraud, and not upon another element. The nature and object of the intent in each conspiracy are not the same, and such a conclusion cannot be presumed. Various inferences can be drawn from the jury's acquittal and the defendants are not able to eliminate all other possible findings to conclude that the jury's verdict was based upon the defendants' lack of intent. Accordingly, the court's dismissal of this indictment based upon collateral estoppel is in error.

The district court's order dismissing the indictment on all grounds is REVERSED AND REMANDED.