**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 98-21120**
_____

**UNITED STATES of AMERICA,**

**Plaintiff-Appellee,**

**versus**

**CRAIG MICHAEL COSCARELLI, also known as**
**John Coscarelli,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Southern District of Texas**
**(H-94-CR-284-1)**

_____

February 10, 2000

Before BARKSDALE, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:[*]

By interlocutory appeal, Craig Michael Coscarelli, having pleaded guilty to conspiracy to commit mail fraud, wire fraud, using a fictitious name with a scheme to defraud, and money laundering, challenges, as violative of double jeopardy, the denial of his motion to dismiss a second indictment's conspiracy count, which alleges conspiracy to commit the same form of objects of the conspiracy as did the first indictment: mail fraud, wire fraud, using a fictitious name with a scheme to defraud, and money laundering. We **AFFIRM**.

I.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Two telemarketing schemes that began in 1993 are the subjects of the two indictments:  American Business Enterprises (ABE; first indictment) and American Family Publishers (AFP; second indictment).  AFP targeted persons having previously done business with a telemarketer, informing them they had won a prize and to send money to cover related expenses; ABE, those with poor credit histories, informing them they could receive a loan or credit card if they paid an advance-fee.

In May 1994, Coscarelli was indicted for his activities with ABE.  He pleaded guilty that October to the conspiracy count; in March 1995, he was sentenced to 60 months imprisonment.

That November, after having pleaded guilty the prior month to the ABE conspiracy count, Coscarelli was indicted for his activity with AFP.  In June 1995, he pleaded guilty and was sentenced; but, in 1998, he was allowed to withdraw his guilty plea.  (This followed an appeal by the Government concerning the sentence and the matter being remanded.  *United States v. Coscarelli*, 105 F.3d 984 (5th Cir. 1997), *rev'd in part en banc*, 149 F.3d 342 (5th Cir. 1998).)  Thereafter, his motion to dismiss the second indictment on double jeopardy grounds was summarily denied; subsequently, for purposes of this appeal, the court found that the issues raised were *not* frivolous.  Accordingly, it granted Coscarelli's interlocutory appeal request.  *See United States v. Brackett*, 113 F.3d 1396, 1398 (5th Cir.), *cert. denied*, 522 U.S. 934 (1997); *United States v. Dunbar*, 611 F.2d 985 (5th Cir.)(en banc), *cert.*

*denied*, 447 U.S. 926 (1980). As a result, trial on the remaining/substantive counts is stayed.

                                II.

The Fifth Amendment protects, *inter alia*, against a second prosecution for the same offense post-conviction. ***E.g., United States v. Beszborn***, 21 F.3d 62, 67 (5th Cir. 1994). Double jeopardy claims are reviewed *de novo*. ***Brackett***, 113 F.3d at 1398. But, the district court's underlying factual findings are reviewed only for clear error. ***United States v. Cihak***, 137 F.3d 252, 257 (5th Cir.), *cert. denied*, ___U.S.___, 119 S. Ct. 118 (1998). The district court summarily denied Coscarelli's motion; thereafter, it denied his request for an evidentiary hearing. In short, there are *no* factual findings to review. (As noted, the district court did find, for interlocutory appeal purposes, that the issues raised in the motion were *not* frivolous.)

For our *de novo* review, we examine the indictments, as well as evidence from trials *or hearings*. ***United States v. Vasquez-Rodriguez***, 978 F.2d 867 (5th Cir. 1992). Therefore, we review the documents cited by the parties to the district court, but limited, of course, to those in the record (pertinent information), as discussed below. Accordingly, concerning the ABE-first-indictment, pertinent information is found in it, the plea agreement, the presentence report (PSR) and the sentencing hearing transcript. For the AFP-second-indictment, such information is found in it, and the PSR. (Because Coscarelli initially pleaded guilty to the second-indictment, a PSR was prepared and sentencing held. As

                              - 3 -

noted, he was later allowed to withdraw that plea.) We also consider the Government's opposition to the motion to dismiss (for admissions).

In district court, the parties referred also to statements given to the FBI; Coscarelli does so here, extensively, *and* even includes them in his record excerpts. But, those statements are *not* in the record. Therefore, they are *not* considered here.

To prevail on a double jeopardy claim, a defendant must show that the two charged offenses are the same in law and in fact. ***United States v. Marable***, 578 F.2d 151, 153 (5th Cir. 1978). If the defendant establishes a *prima facie* claim, the Government bears the burden of proving that the two indictments involve separate and discrete offenses. ***United States v. Schinnell***, 80 F.3d 1064, 1066 (5th Cir. 1996); ***Beszborn***, 21 F.3d at 69.

"The essential issue in the double jeopardy analysis respecting conspiracy is whether one, or more than one, agreement existed." ***United States v. Deshaw***, 974 F.2d 667, 673 (5th Cir. 1992). To determine whether a prior conspiracy conviction involves the same offense as one subsequently charged, five factors are considered, as framed in ***Marable***, 578 F.2d at 154: (1) the time frame of each conspiracy; (2) the co-conspirators; (3) the charged statutory offenses; (4) the overt acts charged, or any other description of conduct that indicates the nature and scope of the activity the Government seeks to punish; and (5) where the alleged events for the conspiracy occurred. ***E.g., Cihak***, 137 F.3d at 258.

A.

- 4 -

Based on our review of the above listed pertinent information, and in the light of these five factors, Coscarelli has established a *prima facie* claim. There is some overlap in the indictments' time frames. Both charge violating the same statute. Some of the conspirators in both indictments are the same, although some were unindicted in the first, and some were unknown in the second.

In addition, the overt acts are similar; each involves using the telephone to convince an individual, through fraud, to send money in exchange for a larger benefit. The primary difference is the lie told the individual. Additionally, the overt acts alleged in the AFP-second-indictment end in May 1994, supporting Coscarelli's contention that both schemes ended then.

It appears that the two schemes were in the same building at least once; and frequently, because of their fraudulent nature, the two entities' names and locations were changed to avoid postal inspectors and defrauded individuals.

Coscarelli having established a *prima facie* claim, the burden shifts to the Government. We consider the five earlier described factors. (Despite the Government addressing each factor, Coscarelli did *not* file a reply brief. Perhaps counsel felt the factors had been covered adequately in his affirmative brief. But there, as noted, great/repeated reliance was placed on FBI-statements that are *not* in the record.)

1.

The Government's contention that there were two separate and distinct conspiracies is premised, as reflected in Coscarelli's

plea agreement, on ABE operating, from February 1993 to July 1993; and AFP, as alleged in the second-indictment, operating from that July to August 1994. Restated, the Government relies on that plea agreement to support its claim that ABE's activities ceased in July 1993. The ABE-first-indictment alleges, however, overt acts by "defendants" as late as September 1993. And, as noted, the overt acts alleged in the AFP-second- indictment ceased in May 1994. The Government contends that the time-frame-overlap is *not* significant; and that, even if it is, this one factor is *not* dispositive. *See* **United States v. McHan**, 966 F.2d 134, 138 (4th Cir. 1992).

We find little, if any, overlap. As the record vividly reflects, fraudulent telemarketing schemes have very short lives; they must frequently move and change names. Coscarelli and his two named co-conspirators (Garcia and Levings) for the ABE-first-indictment, parted company after about a month. Coscarelli testified at the first sentencing hearing that he was *not* part of the newly named scheme — Financial Network — which operated at a new location from May 1993 into July of that year. From that July into that October, Garcia and Levings operated under yet another name (Omega) at another location. Therefore, some of the defendants in the ABE-first-indictment were engaged in the scheme into the Fall of 1993. It appears that Coscarelli parted company, at the latest, in July 1993.

2.

The Government admits in its opposition to the motion that Coscarelli and his son were principal co-conspirators in both

- 6 -

operations.  It contends, however, that Garcia and Levings, the earlier referenced other named co-conspirators in the ABE-first-indictment, were *not* alleged to be involved in the AFP-second-conspiracy.  The second indictment alleges that persons unknown were co-conspirators; but, we are *not* persuaded that Garcia and Levings' role, if any, in the AFP-second-conspiracy has been shown.

### 3.

The Government concedes that both indictments charge Coscarelli under the same statute.  It contends, correctly, that "[i]t is possible to have two different conspiracies to commit exactly the same type of crime", *United States v. Thomas*, 759 F.2d 659, 666 (8th Cir. 1985); and that, where the second conspiracy has a different goal than the first, a second prosecution is *not* barred by double jeopardy.  *United States v. Guzman*, 852 F.2d 1117, 1120-24 (9th Cir. 1988).  For purposes of our review for these two schemes, we agree.

### 4.

Regarding the overt acts alleged, both schemes involved telemarketing.  The Government notes that the misrepresentations differed. For the AFP-second-indictment, the targets were susceptible to telemarketing fraud (had previous telemarketing history); they were informed they had won a prize for which they had to make advance payment of the taxes or a delivery fee.  For the ABE-first-indictment, targeted were persons with poor credit histories, who were told to pay an advance fee to secure a loan or credit card.

Although the misrepresentation was different in each scheme, the end result was the same: defrauding an individual into paying money for a larger promised benefit, which was never delivered. But, the overt acts alleged differed.

5.

For the final factor, the Government contends that, although both operations were conducted in Houston, Texas, different offices and mailing addresses were used. Coscarelli agrees, but maintains that such activity is the nature of telemarketing fraud.

Based on our review of the pertinent data, and pursuant to our consideration of the five factors, we conclude that the Government has met its burden to establish that the indictments charge separate offenses. The conspiracies cover substantially different time frames; do *not* involve all the same key co-conspirators; concern different schemes for which Coscarelli is charged with violation of the same statute; do *not* involve the same basic overt acts; and usually took take place in different locations in Houston.

B.

In the alternative, the Government, advances the "due diligence" exception, recognized in **United States v. Tolliver**, 61 F.3d 1189 (5th Cir. 1995), that it raised in the district court. Because the court did *not* reach this contention in denying Coscarelli's motion, the Government maintains summarily that, should we find double jeopardy, the case should be remanded for consideration of this alternative position.

Obviously, our having found *no* double jeopardy, we do *not* reach this alternative point.   Instead, in our supervisory capacity, we comment on this alternative point only in regard to the incorrect manner in which it is addressed (better yet, *not* addressed) by the Government here.

The "due diligence" point is addressed in Coscarelli's affirmative brief. The Government does *not* respond, other than, as noted, to state summarily that, if a double jeopardy violation is found, the case should be remanded to consider this alternative point.   The Government does *not* even state why the exception might be applicable.   The Government having failed to brief this point, we would have considered it abandoned, had we been required to reach it.   FED. R. APP. P. 28(a)(9)(A), (b); 5TH CIR. R. 28.3(j); *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).

III.

For the foregoing reasons the denial of the  motion to dismiss the conspiracy count is

*AFFIRMED*.