**Hari GOYAL, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Civ. No. 98–169(WHW).

United States District Court, D. New Jersey.

June 29, 2000.

Hari Goyal, Parsippany, NJ, for Petitioner.

Faith S. Hochberg, U.S. Attorney for District of New Jersey, Michael Guadagno, Assistant U.S. Attorney Newark, NJ, for U.S.

## OPINION

WALLS, District Judge.

Hari Goyal ("Goyal") petitions to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Goyal alleges (1) his conviction was obtained in violation of the Double Jeopardy Clause of the Fifth Amendment; and (2) his sentence is excessive and violates the Due Process and Equal Protection Clauses. For the reasons set forth below, the petition is denied.

### Facts and Procedural History

IBM Credit Corporation ("IBMCC") finances computers, computer-related equipment, and information technology. Simplex Computer Centers, Inc. ("Simplex") sold and serviced computer related equipment. Goyal was Simplex's president. In 1990, IBMCC and Simplex entered into an Agreement for Wholesale Financing, in which IBMCC agreed to provide Simplex with financing for purchasing inventory. In September 1992, IBMCC further agreed to finance the accounts receivable of Simplex. (Presentence Investigation Report. ("P.I.R.") at 5.)

Beginning in January 1994, Goyal included 457 false invoices totaling $6,417,-614.25, in the monthly Accounts Receivable Reports sent to IBMCC. (P.I.R. at 6.) IBMCC relied upon the reported value of the accounts receivable in extending financing credit to Simplex, and was therefore induced to continue financing Simplex based upon these misrepresentations. (Pet'r Br. at 5.) In August 1995, Goyal sent a sales journal via interstate carrier from New Jersey to IBMCC in Stamford, Connecticut and faxed an Accounts Receivable Detailed Aging Report to IBMCC in Atlanta, Georgia which stated that accounts receivable totaled $9,518,033.17. (P.I.R. at 6.) IBMCC initiated an audit of Simplex on August 23, 1995, and discovered that less than $1 million of the total listed accounts receivable were valid. (P.I.R. at 6.) IBMCC notified the United States Attorney's Office in Newark on November 6, 1995, and an investigation by the United States Postal Inspector's Office ensued. (P.I.R. at 6.)

On September 10, 1996, Goyal plead guilty to an information which alleged mail and wire fraud in violation of 18 U.S.C. §§ 1341 & 1343. This Court sentenced Goyal on March 13, 1997 to 30 months of incarceration, to be followed by three years of supervised release. In addition, Goyal was ordered to pay restitution in the

amount of $7,000,000 to IBMCC (Gov't Br. at 3) and a special assessment of $100. No direct appeal was taken, nor did Goyal make any other post-conviction efforts. (Gov't Br. at 3.)

On August 25, 1995, two days after IBMCC initiated its audit of Simplex, Goyal filed for bankruptcy protection for Simplex pursuant to Chapter 11 of the United States Code. (P.I.R. at 6 & Pet'r Br. at 5.) Goyal voluntarily filed personal, Chapter 7, bankruptcy on December 19, 1996. (*See* Docket for Bankruptcy Petition No. 96–42009.) On March 13, 1997, the Simplex case and Goyal's personal bankruptcy case were consolidated. The United States Bankruptcy Court refused to discharge the $7 million debt owed to IBMCC by Goyal. (Pet'r Br. at 6, 7.)

## Background

On January 9, 1998, Hari Goyal petitioned to vacate, set aside, or correct his sentence. In support of his petition, Goyal alleges (1) his conviction was obtained in violation of the Double Jeopardy Clause of the Fifth Amendment; and (2) his sentence is excessive and violates the Due Process and Equal Protection Clauses. In a December 31, 1998 submission, Goyal requested the following relief:

(1) Immediate release, and suspension of remaining period including three years supervised release; or

(2) Order of home confinement for the balance of the prison sentence, and to commute the three years supervised release; or

(3) Commute three years supervised release.

■ Goyal was released from prison on April 15, 1999, and is currently serving three years of supervised release. Although Goyal is not in prison, a person subject to supervised release is a "prisoner in custody" within the meaning of § 2255, thus this court has jurisdiction. *United States v. Essig,* 10 F.3d 968, 970 n. 3 (3d

Cir.1993). *See generally Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) (defining "in custody" as government-sponsored restraints on freedom that are not shared by the public generally and stem from the conviction of the crime).

## I. Double Jeopardy

### A. Background

The government maintains that Goyal's double jeopardy claim is procedurally barred by his entry of a guilty plea and his failure to raise the claim on direct appeal. According to the government, Goyal was aware at all times during his criminal prosecution of the ongoing bankruptcy proceedings, thus his double jeopardy claim was available to him five months before he entered his guilty plea. (Gov't Br. at 5, 7, 8.)

Goyal asserts that he filed bankruptcy *after* he entered the plea, and the judgement in bankruptcy court was not entered until September 1997, six months after he was sentenced. Goyal argues that he could not have known at the time he entered his guilty plea and was sentenced, that the bankruptcy court would enter a judgment against him. (Pet'r Resp. at 3.) Thus, Goyal contends that the Court can hear the merits of his claim. Assuming that the petitioner is not procedurally barred, the double jeopardy claim fails on the merits.

Goyal contends that his conviction should be vacated because the government prosecuted him in violation of the Fifth Amendment. He says that his criminal conviction and the United States Bankruptcy Court's refusal to discharge the $7 million debt owed to IBMCC amount to two punishments for the same crime. And relies upon *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) that double jeopardy protections extend to civil punishment.[1]

1. Goyal also asserts that the government violated the Department of Justice's "Petite Poli-

*Halper* held that the Double Jeopardy Clause protected a defendant who was first criminally prosecuted and then subjected to a civil sanction. The Court reasoned that the civil action, brought by the government to recoup losses it had sustained as a result of the criminal activity, resulted in the imposition of a second punishment in the form of a monetary sanction. That civil sanction imposed upon Halper being 220 times greater than the total expenses actually incurred by the government the Court concluded that the purpose of the sanction was to punish. *Id.* at 449, 109 S.Ct. at 1902. Accordingly the Court ruled that when a civil sanction can be so characterized as punitive and retributive, rather than remedial, it cannot be imposed by the government on a defendant who has already been punished criminally in a separate proceeding.[2] *Id.*

Here the government rejoins that double jeopardy protections are not triggered in this case because *Halper* applies only to civil proceedings which are punitive, and the bankruptcy court's decision imposed a forfeiture, not punishment: because the debt that the bankruptcy court refused to discharge was not a penalty or fine, the civil and criminal proceedings are not successive punishments as Goyal alleges.

**B. Discussion**

■ In this matter, the Double Jeopardy Clause simply is not implicated. A private, civil bankruptcy proceeding and criminal prosecution do not constitute a violation of the Double Jeopardy Clause because the bankruptcy litigation was not criminal, nor did it involve the government. *See Helvering v. Mitchell,* 303 U.S. 391, 398–99, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938) ("Unless ... the *proceeding is essentially criminal,* the double jeopardy

clause provided for the defendant in criminal prosecutions is not applicable.") (emphasis added); *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 493, 139 L.Ed.2d 450 (1997); *Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975); *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 548–49, 63 S.Ct. 379, 386, 87 L.Ed. 443 (1943).

The bankruptcy proceedings were between private parties: Goyal and his creditors. IBMCC's decision to seek a judgment in bankruptcy court had no effect on the government's criminal prosecution of Goyal. The distinction between *government* prosecutions and *private* civil proceedings was made clear in *Halper,* at 449, 109 S.Ct. at 1902: "[N]othing in today's opinion precludes a private party from filing a civil suit seeking damages for conduct that previously was the subject of criminal prosecution and punishment. The protections of the Double Jeopardy Clause are not triggered by litigation between private parties."

Nor do our present circumstances mirror the civil forfeiture line of cases cited by the petitioner and the government. Those cases were civil actions brought by the *government* to seize property or fine defendants who were also subject to criminal prosecutions. To repeat, here the government did not participate in the bankruptcy proceedings; the bankruptcy litigation was a private, civil matter. Because the two proceedings were not brought by one sovereign entity, there is no need to analyze whether the bankruptcy order constitutes "punishment" as defined by *Halper* and its progeny. "In order for the Double Jeopardy Clause to have any application, there must be actions by a sovereign, which place an individual twice in jeopardy. The Double Jeopardy Clause does not apply to

cy" forbidding successive prosecutions. This argument will not be entertained in this habeas petition as it does not state a "violation of the Constitution or the laws of the United States." 28 U.S.C. § 2255.

2. In *Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) the Supreme Court overruled the method used in *Halper* to determine whether a sanction imposed in civil litigation brought by the government is "punitive."

actions involving private individuals." *United States v. Beszborn,* 21 F.3d 62, 67 (5th Cir.1994), *cert. denied,* 513 U.S. 934, 115 S.Ct. 330, 130 L.Ed.2d 288 (1994). Goyal's predicament did not result from two actions by the government; there was no violation of the Double Jeopardy Clause.

## II. Excessive Sentence

### A. Background

Goyal claims this Court violated his Due Process and Equal Protection rights when he received a sentence greater than necessary.[3] Additionally, Goyal asserts that the probation officer's Presentence Investigation Report was inaccurate and therefore resulted in a misapplication of the Sentencing Guidelines. Goyal claims the probation officer erred when he reported that IBMCC suffered a loss of $7 million, because the officer did not take into account the value of accounts receivables and inventory that Goyal possessed which would reduce that figure. (Pet'r Br. at 12.)

Goyal did not object to the Presentence Investigation Report or to the application of the Sentencing Guidelines before the sentencing court. In fact, Goyal stipulated in a letter dated February 12, 1997, that he had no objections to the report and he would not contest the amount of loss determined by IBMCC. (Addendum to P.I.R. at 17.) Moreover, Goyal did not directly appeal his sentence.

The government argues that Goyal waived his sentencing objections by failing to raise such claims on direct appeal. The government maintains that Goyal cannot use this petition to collaterally attack his sentence because he has not shown cause to justify his failure to appeal. (Gov't Br. at 6.) Furthermore, the government contends that only in a case of complete miscarriage of justice should the court hear claims that have not been raised on appeal. Goyal was sentenced within the statutory guidelines and his sentence does not rise to the level of a "manifest miscarriage of justice." (Gov't Br. at 7.)

### B. Discussion

■ The Court agrees with the government. Goyal waived his sentencing objections by not seeking to raise them on direct appeal to the Circuit. Because full review of sentencing errors is available on direct appeal, a § 2255 petition cannot be used as a substitute for a direct appeal. *United States v. Essig,* 10 F.3d 968, 979 (3d Cir.1993). To raise claims in a § 2255 petition not asserted during the sentencing hearing or on direct appeal, Goyal must meet the "cause and prejudice" standard of *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). "[A] convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Frady,* 456 U.S. at 167, 102 S.Ct. at 1594.

"In procedural default cases, the cause standard requires the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim." *McCleskey v. Zant,* 499 U.S. 467, 493, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Goyal offers and provides no cause to excuse his failure to raise objections either at his sentencing hearing or on appeal. He only states that he did not appeal because his attorney did not advise him to.[4] (Pet'r Resp. at 2.) The facts related to Goyal's objections to his sentence were available to him at the sen-

---

3. Goyal asserts that the Court ignored the "command of 18 U.S.C. § 3553(a)." (Pet'r Br. at 11.) Section 3553(a) states: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."

4. Goyal has not provided any indication that counsel was ineffective; therefore, that issue will not be addressed.

tencing hearing, and must have been raised on direct appeal to be considered in a collateral petition. *United States v. Biberfeld,* 957 F.2d 98, 104 (3d Cir.1992). Without a demonstration of cause by the petitioner, the Court need not reach the issue of prejudice. His petition has no legal merit and is denied.

### Conclusion

For the foregoing reasons, Goyal's petition for relief pursuant to 28 U.S.C. § 2255 is denied.

SO ORDERED.

### ORDER

Petitioner, Hari Goyal, petitions for relief under 28 U.S.C. § 2255.

Upon review of the documents submitted and for the reasons set forth in the accompanying opinion:

It is on this _____ day of June, 2000,

ORDERED that the petition is dismissed with prejudice.