# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10932

United States Court of Appeals
Fifth Circuit

**FILED**

August 12, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

MATTHEW NORMAN SIMPSON,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, OWEN, and HIGGINSON, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Our court previously remanded this case to the district court after reversing one of Matthew Simpson's convictions.[1]  Simpson was resentenced and now appeals that sentence on several grounds, asserting, among other claims, that 18 U.S.C. § 3581(b)(3) imposes a statutory maximum sentence of twelve years for a Class C felony and that the district court accordingly erred in imposing 240 months of imprisonment for conspiracy to commit mail and wire fraud and a consecutive sentence of 240 months of imprisonment for obstruction of justice, both of which are Class C felonies.  We affirm.

---

[1] *United States v. Simpson*, 741 F.3d 539, 546 (5th Cir. 2014).

No. 14-10932

# I

Simpson and 18 co-defendants were indicted in 2009 in a complex conspiracy. While most of Simpson's co-conspirators pleaded guilty, Simpson and three others proceeded to trial.[2] As set forth in this court's prior opinion:

> [t]rial evidence showed that the defendants and their co-conspirators conspired to defraud various telecommunications companies, lessors, creditors, credit reporting agencies, and various other service providers, of goods and services. Evidence showed that beginning in 2003, the co-conspirators were involved in the creation and/or operation of a series of corporate entities which defrauded telecommunications companies, including, *inter alia*: American Discount Telecom (ADT), a company that promulgated a method of using routing codes that made long distance or toll-free calls appear to be local calls, thus avoiding paying larger telephone service providers for use of their networks; TxLink, a wholesale dialup internet company which Simpson used to steal network capacity and divert customer payments from one of his employers, CommPartners; camophone.com, a spoofing service that allowed customers to disguise the number [from which] they were calling . . ., which allowed spoofed calls to be routed locally through toll-free lines, thereby avoiding paying fees for the calls; ColoExchange, a colocation company that Simpson used to engage in both lease fraud and insurance fraud; Aston Technology, a company that Michael Faulkner, a co-conspirator, pretended to control to obtain network capacity without paying for it; and Union Datacom (UDC), Premier Voice, Lone Star Power, Incavox, and several other corporate entities that entered into contracts for commercial telecommunications services, leases, and other agreements for goods and services, which were not paid for. The companies were then abandoned or renamed by the co-conspirators to avoid the debts. Evidence showed that the defendants provided false identity information and postal addresses; provided false credit histories, bills, invoices, financial statements, and credit references; and used assumed identities in

---

[2] *Id.* at 547.

applications and contracts in order to hide their association with the shell corporate entities and with each other.[3] The jury convicted Simpson of conspiracy to commit mail and wire fraud under 18 U.S.C. § 1349; aiding and abetting the transmission of spam under 18 U.S.C. § 1037(a)(2); obstruction of justice under 18 U.S.C. § 1512(c)(1); and false registration of a domain name under 18 U.S.C. § 3559(g)(1).

Simpson was sentenced to a term of 480 months in prison. Specifically, the district court sentenced Simpson to 240 months for the conspiracy conviction and 240 months for the obstruction of justice conviction, to be served consecutively. For Simpson's other two convictions, the district court imposed sentences to run concurrently: thirty-six months of imprisonment for aiding and abetting the transmission of spam and eighty-four months of imprisonment for falsely registering a domain name.

In his first appeal, Simpson challenged his convictions and sentences. Although we affirmed three of Simpson's convictions and a two-level sentence enhancement based on Simpson's perjured testimony,[4] we reversed the false-registration conviction because it was not supported by sufficient evidence.[5] We accordingly vacated Simpson's sentence and remanded for resentencing.[6]

On remand, the district court reimposed the 480-month sentence consisting of consecutive sentences of 240 months each for Simpson's conspiracy and obstruction of justice convictions and a concurrent sentence of thirty-six months for aiding and abetting the transmission of spam. Simpson again appeals to this court arguing that the district court committed procedural errors and that the sentence is substantively unreasonable. The

---

[3] *Id.* at 546-47.

[4] *Id.* at 548-552, 555-56.

[5] *Id.* at 552-53.

[6] *Id.* at 553, 560.

No. 14-10932

Government contends that several of Simpson's arguments, which were not raised in his first appeal, are waived under the "mandate rule." We do not address the applicability of the mandate rule but proceed to the merits of the issues raised because there was no sentencing error.[7]

## II

After this court reversed Simpson's false-registration conviction, an addendum to Simpson's original Presentence Report (PSR) reflected that, "[b]ased on a Criminal History Category of I and a Total Offense Level of 43," an advisory guidelines sentence of life imprisonment would result. However, because the combined statutory maximums for his three affirmed convictions was less than a life sentence, the guidelines range was reduced to reflect the statutory maximum of 516 months.[8] The district court imposed a sentence that included 480 months of imprisonment.

## III

We first address Simpson's arguments that the district court committed procedural error during resentencing.

### A

The statutes under which Simpson was convicted for obstruction of justice and for conspiracy to commit wire and mail fraud expressly provide that the maximum sentence for each of these convictions is twenty years.[9]

---

[7] *See United States v. Pineiro*, 470 F.3d 200, 205 (5th Cir. 2006) ("Despite its importance, the *mandate rule* is a discretionary device and not immutable." (citing *United States v. Becerra*, 155 F.3d 740, 753 (5th Cir. 1998))).

[8] U.S.S.G. § 5G1.1(a).

[9] *See* 18 U.S.C. §§ 1349 (stating that a conviction for conspiracy to commit mail or wire fraud "shall be subject to the same penalties as those prescribed for the offense"), 1512(c) (providing that the maximum sentence for the relevant obstruction offense to be "not more than 20 years"); 18 U.S.C. §§ 1341 (providing that the maximum sentence for a mail fraud conviction is "not more than 20 years"), 1343 (providing that the maximum sentence for a wire fraud conviction is "not more than 20 years").

No. 14-10932

Nonetheless, Simpson argues that the maximum sentence for each of these convictions is twelve years. "[W]e review *de novo* a sentence that allegedly exceeds the statutory maximum term."[10]

Simpson's argument relies on the interaction between sections 3559(a) and 3581 of Title 18 of the United States Code. Under § 3559(a), "[a]n offense that is not specifically classified by a letter grade in the section defining it, is classified if the maximum term of imprisonment authorized is . . . less than twenty-five years but ten or more years, as a Class C felony."[11] None of the statutes under which Simpson was convicted for conspiracy to commit mail and wire fraud and for obstruction of justice contain a letter grade.[12] Under § 3581, the term of imprisonment for a Class C felony is "not more than twelve years."[13] Simpson reasons that § 3581 is controlling and imposes a maximum sentence of twelve years for each of his Class C felony convictions.

But Simpson's argument overlooks other statutory provisions. Section 3559(b) provides that an offense assigned a letter grade "carries all the incidents assigned to the applicable letter designation, *except that the maximum term of imprisonment is the term authorized by the law describing the offense.*"[14] Section 3551 indicates that the sentencing provisions in chapter 227 of Title 18, which include § 3581, do not apply when "otherwise specifically provided."[15]

---

[10] *United States v. Del Barrio*, 427 F.3d 280, 282 (5th Cir. 2005) (citing *United States v. Ferguson*, 389 F.3d 847, 849 (5th Cir. 2004)).

[11] 18 U.S.C. § 3559(a)(3).

[12] *See* 18 U.S.C. §§ 1341, 1343, 1349, 1512(c).

[13] 18 U.S.C. § 3581(b)(3).

[14] 18 U.S.C. § 3559(b) (emphasis added).

[15] 18 U.S.C. § 3551(a) provides:

No. 14-10932

Our court has not yet analyzed, in a published opinion, the interplay between §§ 3551, 3559, 3581, and a statute of conviction that specifies a maximum sentence.  However, in *United States v. Pontefract*, an unpublished opinion, we rejected a defendant's argument that a thirty-year sentence for a Class B felony exceeded § 3581's maximum twenty-five-year sentence for Class B felonies because the statute of conviction "specifically provided" for a maximum sentence of thirty years.[16]  Four of our sister circuit courts have addressed similar questions and all have held that the sentencing provisions in the statute of conviction apply notwithstanding any arguable conflict with the provisions in § 3581.[17]  As the Second Circuit noted, "Congress would not logically leave in place its statutory scheme that assigned a penalty to the commission of an offense, classify the offense according to that penalty, and then use the same classification to assign a different penalty."[18]  We agree and hold that the statutory maximum sentences for convictions under § 1349 for conspiracy to commit mail or wire fraud and § 1512(c)(1) for obstruction of justice are twenty years.

## B

Simpson's offense level was increased by two points under § 2B1.1(b)(4) for receiving stolen property while being "in the business of receiving and selling stolen property."[19]  The district court's determination that Simpson was

---

> Except as otherwise specifically provided, a defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter . . . .

[16] *United States v. Pontefract*, 515 F. App'x 327, 328 (5th Cir. 2013) (per curiam).

[17] *See United States v. Avery*, 15 F.3d 816, 818-19 (9th Cir. 1993); *United States v. Wilson*, 10 F.3d 734, 735-37 (10th Cir. 1993); *United States v. Gonzalez*, 922 F.2d 1044, 1048-51 (2d Cir. 1991); *United States v. Donley*, 878 F.2d 735, 739-41 (3d Cir. 1989).

[18] *Gonzalez*, 922 F.2d at 1050.

[19] U.S.S.G. § 2B1.1(b)(4).

in the business of receiving and selling stolen property is a factual finding we review for clear error.[20]

Simpson argues that § 2B1.1(b)(4) should not apply to him because it is "intended as a 'punishment for fences, people who buy and sell stolen goods, thereby encouraging others to steal, as opposed to thieves who merely sell the goods which they have stolen.'"[21]   But Simpson does not dispute that he acquired telephone minutes and broadband service from Faulkner, which he resold, and the trial evidence demonstrates that Simpson and his co-conspirators used various entities to steal telecommunications services and resell them.[22]   He nonetheless asserts that this enhancement only applies to tangibles, "not intangibles like telephone minutes or services."  Simpson cites no authority for this proposition, and we have found none.  We see no basis in the text of § 2B1.1(b)(4) for limiting its applicability to tangibles.

Simpson posits that this sentence enhancement should not apply to him because buying and selling stolen telecommunications services was not a significant enough proportion of his business.  The sole authority he cites for this proposition is *United States v. Sutton*, in which we upheld the imposition of this sentence enhancement when the defendant made far more money over a five-month span from selling stolen cars than from his legitimate dealership.[23]   But *Sutton* nonetheless rejected the contention that Simpson asserts in this appeal.  The defendant in *Sutton* argued that the sentence enhancement for receiving and selling stolen property should only apply to

---

[20] *United States v. Mackay*, 33 F.3d 489, 496 (5th Cir. 1994).

[21] *See United States v. Myers*, 198 F.3d 160, 164 (5th Cir. 1999) (emphasis omitted) (quoting *United States v. Sutton*, 77 F.3d 91, 94 (5th Cir. 1996)).

[22] *United States v. Simpson*, 741 F.3d 539, 546-47 (5th Cir. 2014).

[23] *Sutton*, 77 F.3d at 92-94.

No. 14-10932

"those who *make their living* from selling stolen goods."[24]  This court disagreed, noting that "[w]e have repeatedly stated that a person can receive the 'in the business' enhancement when the only goods he has fenced are those for which he is convicted."[25]  The evidence establishes that Simpson bought and sold stolen telecommunications services, and the district court did not clearly err in finding that Simpson was in the business of receiving and selling stolen property, even assuming a larger proportion of Simpson's business was legitimate.

## C

The district court imposed a two-level enhancement under what is now § 2B1.1(b)(6) of the Guidelines, which applies when "(A) the defendant was convicted of an offense under 18 U.S.C. § 1037; and (B) the offense involved obtaining electronic mail addresses through improper means."[26]  Simpson was convicted under § 1037 and was originally sentenced to thirty-six months of imprisonment for that specific offense.  The district court reimposed the thirty-six-month sentence at resentencing.

Simpson first challenges the application of this sentence enhancement on the basis that by the time of resentencing, he had already served the entirety of the thirty-six-month sentence for his § 1037 conviction.  Therefore, he asserts, any increase in his sentence based on the § 1037 conviction violates the Fifth Amendment's double jeopardy clause.[27]  This challenge lacks merit. The district court was not precluded from imposing this sentence enhancement

---

[24] *Id.* at 93.

[25] *Id.* (citing *United States v. Esquivel*, 919 F.2d 957 (5th Cir. 1990); *United States v. Mackay*, 33 F.3d 489 (5th Cir. 1994)).

[26] U.S.S.G. § 2B1.1(b)(6) (2014).  At the time of Simpson's original sentencing, the text of this provision was contained in U.S.S.G. § 2B1.1(b)(7) (2011).

[27] U.S. CONST. amend. V.

No. 14-10932

based on Simpson's affirmed § 1037 conviction. Simpson is entitled to the credit for the time he served up until resentencing against his sentence for the § 1037 conviction.[28]   But the district court was entitled to consider the conviction under § 1037 in applying the sentencing enhancement under § 2B1.1(b)(6). Use of the § 1037 conviction did not violate the Double Jeopardy clause. We have previously held that double jeopardy principles are not offended by the use of *prior convictions* to enhance subsequent convictions.[29] It follows, *a fortiori*, that double jeopardy concerns are not implicated here, where a sentence enhancement is again imposed during resentencing.

Simpson asserts in the alternative that the second prong of the sentence enhancement, that the offense involved improperly obtaining e-mail addresses, is not supported by evidence in the record. But Simpson was convicted under § 1037 for aiding and abetting the transmission of spam, and trial testimony established that the spammers used "dictionary attacks," which automatically generated e-mail addresses that are likely to belong to real people. Simpson does not argue that dictionary attacks do not qualify as "improper means" under the enhancement. We do note, however, that under the CAN-SPAM Act of 2003, it is unlawful to send e-mail to addresses obtained by a dictionary attack.[30]   The district court did not err by assessing this two-level sentence enhancement.

**D**

Simpson challenges the district court's imposition of a two-level enhancement under § 2B1.1(b)(9)(B) of the Guidelines, which applies if the "offense involved . . . a misrepresentation or other fraudulent action during the

---

[28] *See* 18 U.S.C. § 3585(b).

[29] *Sudds v. Maggio*, 696 F.2d 415, 417-18 (5th Cir. 1983) (per curiam).

[30] 15 U.S.C. § 7704(b)(i)(A)(ii).

course of a bankruptcy proceeding."[31] Simpson contends that the evidence does not support the PSR's factual assertion that a misrepresentation was made in a bankruptcy proceeding. The record supports the application of this enhancement. The evidence reflects that Simpson sold one of his companies, Symatec, to Randy Wilson, who was doing business as Express Telephone Services (ETS). Wilson transferred ETS's customers to Symatec, with Simpson's knowledge, with the intent of shielding ETS's assets from creditors. ETS subsequently declared bankruptcy. Simpson was paid for his participation in this scheme to hide ETS's assets. The district court did not clearly err by finding that Simpson's offense involved fraudulent action during the course of a bankruptcy proceeding.

Simpson argues that notwithstanding the evidence, his sentence cannot be enhanced for any misrepresentations made during ETS's bankruptcy proceeding because his indictment was not filed until after the five-year limitations period specified in 18 U.S.C. § 3282 had run.[32] But § 3282 applies only to the prosecution, trial, and punishment of "offenses," and no formal charges were brought against Simpson for any fraud he committed in relation to the ETS bankruptcy.[33] There is no dispute that the prosecution of Simpson for the crimes of which he was convicted was brought in a timely manner. Section 3282 does not apply to information that leads to a sentence

---

[31] U.S.S.G. § 2B1.1(b)(9)(B).

[32] *See* 18 U.S.C. § 3282(a) ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.").

[33] *See id.*

enhancement,[34] and § 2B1.1(b)(9) does not limit its relevance to the statute of limitations period.[35]

## E

The district court imposed a two-level enhancement under § 2B1.1(b)(2)(A) of the Guidelines for offenses "involv[ing] 10 or more victims."[36] Simpson appears to argue that the list of victims is inaccurate because it "includes a large number of businesses concerning which appellant had neither involvement nor knowledge, and certainly no control." The commentary to the Guidelines defines a "victim" as "any person who sustained any part of the actual loss determined under subsection (b)(1)."[37] The term "actual loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense."[38] "Reasonably foreseeable pecuniary harm" is defined as "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense."[39] The original PSR identified ten or more victims of offenses committed by Simpson and the amounts of loss that each suffered as a result of Simpson's actions or omissions or as a result of his complicity in and awareness of the acts or omissions of others in furtherance of the offenses for which Simpson was convicted. Simpson has not rebutted the factual assertions in the PSR with any evidence regarding at least ten of the victims identified.

---

[34] *Cf. United States v. Lokey*, 945 F.2d 825, 840 (5th Cir. 1991) (concluding that the five-year statute of limitations did not apply to the calculation of drug quantities for which the defendant was responsible under the sentencing guidelines).

[35] *See* U.S.S.G. § 2B1.1(b)(9).

[36] U.S.S.G. § 2B1.1(b)(2)(A).

[37] U.S.S.G. § 2B1.1 cmt. 1.

[38] *Id.* cmt. 3(A)(i).

[39] *Id.* cmt. 3(A)(iv).

No. 14-10932

The district court did not clearly err when it imposed the sentence enhancement for ten or more victims.

**F**

Simpson argues, citing the Supreme Court's decisions in *Alleyne v. United States*[40] and *Burrage v. United States*,[41] that the sentence enhancements increased his guidelines calculation above the statutory maximum penalty and must have been supported by facts found by a jury beyond a reasonable doubt. But the guidelines calculation did not "expose"[42] Simpson to a sentence that exceeded the statutory maximum. As discussed above, the statutory maximum for conspiracy to commit mail or wire fraud is 240 months of imprisonment (twenty years); the statutory maximum for Simpson's obstruction of justice conviction is also 240 months; and the statutory maximum for aiding and abetting the transmission of spam is thirty-six months.[43] The PSR limited its calculation of the guidelines sentencing range to the statutory maximum of 516 months. The district court acted within its discretion in imposing consecutive sentences for the conspiracy and obstruction convictions, which resulted in a below-guidelines sentence of 480 months of imprisonment.[44] The district court did not violate the Sixth Amendment in imposing a prison sentence of 480 months.

**G**

In imposing the original sentence, the district court applied a two-level enhancement under § 3C1.1 of the Guidelines for obstructing justice by committing perjury during trial. We affirmed the application of this sentence

---

[40] 133 S. Ct. 2151 (2013).

[41] 134 S. Ct. 881 (2014).

[42] *Burrage*, 134 S. Ct. at 887; *Alleyne*, 133 S. Ct. at 2158.

[43] *See* 18 U.S.C. §§ 1037(b)(2), 1341, 1343, 1349, 1512(c).

[44] 18 U.S.C. § 3584(a).

enhancement on Simpson's first appeal.[45]  Simpson now argues that because of this affirmance, "res judicata" precluded the district court from imposing any sentence for his conviction under § 1512(c)(1) for destroying records and data that were the subject of search warrant that exceeds "the number of months permitted by a 2-level enhancement."  Simpson's argument fails.  In affirming the § 3C1.1 enhancement, this court decided only that the district court did not clearly err in finding that Simpson committed perjury during trial.[46]  We provided no further guidance on the appropriate sentence the district court should impose on remand for Simpson's obstruction of justice conviction under § 1512(c)(1) for destroying evidence after search warrants had been issued.[47]

## IV

Having determined the district court did not commit a procedural error, we address Simpson's argument that his sentence to 480 months of imprisonment is substantively unreasonable.  We review the substantive reasonableness of the sentence under an abuse-of-discretion standard.[48]  Our review is "highly deferential as the sentencing judge is in a superior position to find facts and judge their import under § 3553(a) with respect to a particular defendant."[49]  The fact that we might reasonably conclude "that a different sentence was appropriate is insufficient to justify reversal of the district court."[50]

---

[45] *United States v. Simpson*, 741 F.3d 539, 555-56 (5th Cir. 2014).

[46] *Id.* at 555-56.

[47] *See id.*

[48] *Gall v. United States*, 552 U.S. 38, 51 (2007).

[49] *United States v. Campos-Maldonado*, 531 F.3d 337, 339 (5th Cir. 2008) (per curiam) (citing *Gall*, 552 U.S. at 50-51).

[50] *Gall*, 552 U.S. at 51.

We presume sentences within or below the calculated guidelines range are reasonable.[51] The district court concluded that the guidelines range of 516 months of imprisonment was "greater than what is necessary to comply with the purposes for sentencing" and imposed a downward-variant sentence of 480 months. Simpson can rebut the presumption that this sentence is reasonable by demonstrating that the sentence: "(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors."[52]

During resentencing, the district court explained the reasons for imposing the 480-month sentence, including the district court's assessment that since the first sentencing hearing, Simpson had still not accepted responsibility or expressed remorse for his criminal activity:

> [T]he jury found that [Simpson] committed the crime of obstruction in count 4 and I found that Mr. Simpson committed perjury during his trial testimony. And I was looking today to see whether Mr. Simpson would say to me, judge, now that all of my convictions except seven have been affirmed I want to admit to you what I have done, I want to admit the crime, I want to admit what I did. And he still has not.

The court then turned to a letter Simpson had sent to the court expressing some remorse, but the court determined that it was "almost the bare minimum" because Simpson did not accept criminal responsibility.

Simpson asserts that the district court gave undue weight to his lack of remorse and failure to accept responsibility because these factors were already

---

[51] *United States v. Breland*, 647 F.3d 284, 291 (5th Cir. 2011) ("A below-Guidelines sentence is presumptively reasonable."), *vacated on other grounds by* 132 S. Ct. 1096 (2012); *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009) ("This court applies a rebuttable presumption of reasonableness to a properly calculated, within-guidelines sentence . . . .").

[52] *United States v. Warren*, 720 F.3d 321, 332 (5th Cir. 2013) (quoting *United States v. Peltier*, 505 F.3d 389, 392 (5th Cir. 2007)).

taken into account by the sentencing guidelines.  Specifically, Simpson did not receive a two-level reduction for acceptance of responsibility under § 3E1.1 of the Guidelines because he proceeded to trial.[53]  Simpson's argument is without merit, however, because we have previously recognized that a defendant's lack of remorse and acceptance of responsibility are acceptable sentencing considerations,[54] and that the district court, "in crafting an individualized sentence[,] . . . is free to give more or less weight to factors already accounted for in th[e] advisory range."[55]

Simpson also asserts that the district court punished him for denying his guilt and exercising his Sixth Amendment right to a trial.  But the record reflects that the district court focused on (1) Simpson's refusal to accept his criminal responsibility after his convictions had been affirmed by this court and (2) the fact that Simpson committed perjury during the trial.  Simpson has not established that he was punished for exercising his right to a trial.

Simpson contends that the court's emphasis on his lack of remorse "appears to suggest that only his confinement for most of his life can achieve correction and rehabilitation," an impermissible basis for his sentence.[56] Simpson does not identify any statement by the district court reflecting that it

---

[53] U.S.S.G. § 3E1.1 cmt. 2.

[54] *United States v. Douglas*, 569 F.3d 523, 527 (5th Cir. 2009) ("We hold that 'lack of remorse' and 'acceptance of responsibility' can be separate factors and that a district court may consider each independently of the other.").

[55] *Id.* at 528; *see also United States v. Key*, 599 F.3d 469, 475 (5th Cir. 2010) ("[G]iving extra weight to circumstances already incorporated in the guidelines . . . is within the discretion of the sentencing court.").

[56] *See* 18 U.S.C. § 3582(a); *Tapia v. United States*, 131 S. Ct. 2382, 2391 (2011) ("Section 3582(a) precludes sentencing courts from imposing or lengthening a prison term to promote an offender's rehabilitation."); *United States v. Wooley*, 740 F.3d 359, 362-63 (5th Cir. 2014).

intended the sentence to promote correction or rehabilitation, and our review of the record finds none.

In fact, the district court explained at length each of its considerations for the sentence with specific references to the § 3553(a) factors. Simpson nonetheless argues that the district court failed to consider adequately the § 3553(a) factors. In support, Simpson cites *United States v. Corsey*,[57] in which the Second Circuit held that the district court may have erred because it failed to weigh the § 3553(a) factors and instead "seemed to assume that imposing a statutory maximum sentence reflected a per se reasonable sentence."[58] In *Corsey*, as in Simpson's case, the initial guidelines calculation was reduced to produce a guidelines sentence equal to the statutory maximum.[59] However, the district court in *Corsey* made "only a passing mention to any of the section 3553(a) factors,"[60] while the district court here carefully analyzed several of those factors. In *Corsey*, the district court imposed the statutory maximum sentence without indication that it had considered the possibility of another reasonable sentence.[61] Here, the district court expressly found that the statutory maximum sentence was greater than necessary to achieve the goals of sentencing and imposed a below-guidelines sentence. Additionally, Simpson's argument that the district court "gave almost no attention" to his post-offense conduct is belied by the record. The district court expressly stated that it had considered Simpson's post-offense conduct and declined to afford it considerable weight in light of Simpson's continued refusal to accept criminal responsibility or show remorse.

---

[57] 723 F.3d 366 (2d Cir. 2013) (per curiam).

[58] *Id.* at 375.

[59] *Id.*; *see also* U.S.S.G. § 5G1.1(a).

[60] *Corsey*, 723 F.3d at 376.

[61] *Id.* at 371-72, 376.

No. 14-10932

Simpson notes that the 480-month sentence far exceeds the seventy-five-month average sentence for fraud in the same loss category. But Simpson has not demonstrated that the seventy-five-month average involves similarly situated defendants. It is unclear whether those defendants, like Simpson, had also been convicted of two additional offenses or found to have committed perjury during trial. As the district court noted, uniformity is important, but sentencing is "individualized."[62] Moreover, Simpson's additional arguments pertaining to the district court's consideration of the § 3553(a) factors demonstrate only Simpson's disagreement with the district court's sentence.[63] Simpson has not shown that the district court failed to "account for a factor that should have received significant weight," gave "significant weight to an irrelevant or improper factor," or made a "clear error of judgment in balancing the sentencing factors."[64] Accordingly, Simpson has not rebutted the presumption of reasonableness for his below-guidelines sentence.

The district court found that the loss amount was in excess of $20,000,000. Simpson contends that this loss amount, though properly calculated under the Guidelines, cannot reliably be used as a proper measure of culpability or harm to the victims. He cites no authority for this proposition. Similarly, Simpson challenges various factual matters in scatter-gun fashion, without citation to any specific provisions of the Guidelines, arguing that a substantial variance from the loss amount was warranted in this case or that the loss amount is not a reliable measure of his culpability. All of these arguments are contained within the section of his brief that assert his sentence

---

[62] *See United States v. Douglas*, 569 F.3d 523, 528 (5th Cir. 2009).

[63] *United States v. Rodriguez*, 660 F.3d 231, 235 (5th Cir. 2011) ("A defendant's disagreement with the propriety of the sentence imposed does not suffice to rebut the presumption of reasonableness that attaches to a within-guidelines sentence.").

[64] *United States v. Warren*, 720 F.3d 321, 332 (5th Cir. 2013).

17

was substantively unreasonable.  At bottom, he is disagreeing with the weight the district court gave to the sentencing factors.  We cannot say based on the record before us that the district court made a clear error in judgment in balancing the sentencing factors, though we recognize that the forty-year sentence imposed upon Simpson is a lengthy one.

Simpson asserts that use of the loss amount under the Guidelines should not be given the same deference as guideline provisions developed by the Sentencing Commission based on empirical research.  We have rejected this and similar arguments.  The issue is foreclosed in this circuit.[65]

*     *     *

The judgment of the district court is AFFIRMED.

---

[65] *See, e.g., United States v. Duke*, 788 F.3d 392, 397-98 (5th Cir. 2015) (citing *United States v. Miller*, 665 F.3d 114, 121 (5th Cir.2011)); *United States v. Ellis*, 720 F.3d 220, 228 (5th Cir. 2013).