# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 11, 2025

Lyle W. Cayce
Clerk

No. 23-11265

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

CARLOS RAY KIDD,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:05-CR-117-1

Before CLEMENT, OLDHAM, and WILSON, *Circuit Judges*.

CORY T. WILSON, *Circuit Judge*:

After being convicted in federal court in 2007 for sending threatening communications, Carlos Ray Kidd was sentenced to 60 months' imprisonment. On appeal, this court remanded for resentencing because the district court had miscalculated the Sentencing Guidelines range. But the resentencing hearing did not take place, and neither the Government nor Kidd's counsel alerted the district court to the oversight. Instead, Kidd continued to serve unrelated state sentences under the mistaken impression that his 2007 federal sentence remained valid. It was not until 2023, after

No. 23-11265

Kidd's attorney discovered the lapse, that the resentencing hearing belatedly occurred.

Kidd now appeals the district court's 2023 sentence, asserting that the sixteen-year delay in resentencing was a violation of his due process rights and contending that the district court erred in imposing his new sentence. We affirm.

**I.**

In 2005, while serving a 10-year state sentence in Texas for aggravated assault and burglary, Carlos Ray Kidd mailed two threatening letters: one to a federal district judge in Lubbock, Texas, threatening to kill him, and another to the district court clerk's office in Lubbock, threatening to burn down the courthouse and kill several court personnel. Kidd was subsequently indicted by a federal grand jury in Lubbock for two counts of mailing threatening communications in violation of 18 U.S.C. § 876(c), and one count of threatening to damage by fire in violation of 18 U.S.C. § 844(e). In January 2007, Kidd pled guilty to one count of mailing a threatening communication.

The initial presentence report (PSR) recommended awarding Kidd a three-level reduction in offense level for acceptance of responsibility. *See* U.S.S.G. § 3E1.1 (2003). But the Government objected to the reduction because Kidd had sent additional threatening letters to prosecutors in Wisconsin and Kentucky after pleading guilty. A subsequent addendum to the PSR agreed that Kidd would not qualify for the reduction if Kidd had indeed sent those threatening letters.

In April 2007, the district court sentenced Kidd to 60 months' imprisonment, to run consecutively to the 10-year state sentence that Kidd was already serving. Mistakenly believing that the three-level reduction would make no difference in the resulting Guidelines range, the district court

2

overruled the Government's objection without engaging its merits and ostensibly awarded the reduction. Despite purporting to grant the reduction, the district court erroneously imposed a sentence that reflected Kidd's original offense level.[1]

Kidd appealed the sentence as procedurally unreasonable. While maintaining that Kidd should not receive the reduction for acceptance of responsibility, the Government conceded that the district court had erred in calculating the Guidelines range and moved to remand for resentencing. In December 2007, this court granted the Government's motion for remand without explanation. *United States v. Kidd*, No. 07-10499 (5th Cir. Nov. 16, 2007) (order granting Government's motion).

But the resentencing hearing did not take place. Instead, Kidd's case was essentially memory-holed while he remained in state prison. The district court never set a resentencing hearing, and neither the Government nor Kidd's defense attorneys pressed the matter.[2] Kidd also seems to have been unaware that his case had been remanded and that he needed to be resentenced.

Further muddling matters were Kidd's subsequent state and federal convictions. In 2008, a Texas court sentenced Kidd to ten years in prison for a 2005 prison escape, to run consecutively to his previous state sentence. And in 2012, Kidd received a five-year state sentence for harassment in a

---

[1] A three-level reduction in offense level resulted in a Guidelines range of 41 to 51 months. Without the reduction, and pursuant to a statutory cap, the range would have been 57 to 60 months. The district court erroneously believed the reduction made no difference: Weighing the Government's objection, the court asked, "Well, even if the [c]ourt agreed, the statutory maximum is sixty months, so would that make a difference?" When the Government incorrectly answered "[n]o," the court awarded the reduction, believing "it [was] not crucial to the matter."

[2] Even now, neither party can explain why Kidd's case was forgotten.

correctional facility.   Both state sentences were ordered to be served concurrently with his federal sentence—which, unbeknownst to the state courts, had not been reimposed—and set to expire in 2022.

In 2014, Kidd also notched another federal conviction for mailing threatening communications—this time in North Dakota.  The district court there sentenced him to 60 months in prison, to run concurrently with his Texas state sentences, but consecutive to the 2007 Texas federal sentence (i.e., for a total of ten years in federal custody).  Of course, the North Dakota sentence did not account for the fact that Kidd had never been resentenced for his 2007 federal conviction.

In August 2021, Kidd was released on parole from state custody and entered federal custody.  It was only after he began serving federal time—in April 2023, nearly sixteen years after this court's remand for resentencing—that his newly appointed attorney realized Kidd had never been resentenced for his 2007 conviction.  Counsel notified the district court, and the court set a September 2023 resentencing hearing.  The hearing was continued because Kidd was hospitalized in September due to what he described as a suicide attempt, and because Kidd's attorney and a subsequently appointed attorney both withdrew from representation due to conflicts with Kidd.

The long-delayed resentencing finally took place in December 2023.  The district court first denied Kidd's motion to dismiss the underlying charges for denial of due process.  While the court expressed astonishment at the unusual procedural history and delay in resentencing, it found that "ultimately, there was no prejudice as a result," because Kidd had been imprisoned all along "serving time in multiple other sentences."  The district court then resentenced Kidd to 60 months in prison, to run consecutively to the North Dakota sentence.  The court also weighed the merits of Kidd's request for a reduction of offense level for acceptance of responsibility—

correcting the court's original mistake—and denied it. *See* U.S.S.G. § 3E1.1 (2023). Kidd then noticed this appeal, raising both the delay in resentencing and the propriety of the sentence itself.

While this appeal was pending, the North Dakota district court amended its judgment, clarifying and confirming that the North Dakota sentence should run concurrently with Kidd's state sentences. With this clarification, the Federal Bureau of Prisons (BOP) now calculates Kidd's release date to occur in March 2026, very close to the release date BOP calculated prior to resentencing.[3] For the benefit of any (understandably) perplexed reader, the following diagram depicts the interplay between Kidd's federal and state sentences after the most recent clarifications:



## II.

This court reviews constitutional questions *de novo*. *United States v. Perez-Macias*, 335 F.3d 421, 425 (5th Cir. 2003). We "review the sentencing court's determination of acceptance of responsibility with even more deference [than] is due under a clearly erroneous standard because the sentencing judge is in a unique position to assess the defendant's acceptance

---

[3] According to an addendum to the PSR submitted to the district court before the 2023 resentencing, BOP had projected a release date in February 2026 with good time credit. Of course, this was before BOP knew Kidd needed to be resentenced. BOP had determined that the North Dakota sentence would run concurrently with the state sentences, while the 2007 sentence would run consecutively to the state sentences. BOP made additional adjustments to Kidd's sentence calculations while this appeal was pending, but for mercy's sake, we omit those details as they do not bear on our decision.

of responsibility and true remorse." *United States v. Angeles-Mendoza*, 407 F.3d 742, 753 (5th Cir. 2005). This court will affirm "unless the district court's denial of a reduction is 'without foundation.'" *United States v. Lord*, 915 F.3d 1009, 1017 (5th Cir. 2019) (quoting *United States v. Juarez-Duarte*, 513 F.3d 204, 211 (5th Cir. 2008) (per curiam)). The substantive reasonableness of the district court's sentence is reviewed for abuse of discretion. *United States v. Gomez*, 905 F.3d 347, 351 (5th Cir. 2018).

### III.

Kidd argues on appeal that (A) the sixteen-year delay between remand and resentencing effected a denial of due process, such that his indictment should be dismissed. In the alternative, he contends (B) that the district court erred by denying a three-level reduction of his offense level for acceptance of responsibility and that the 60-month sentence is substantively unreasonable.

### A.

In the past, parties before this court relied on the Sixth Amendment's guarantee of a speedy trial to support their sentencing-delay claims. *See, e.g.*, *United States v. Abou-Kassem*, 78 F.3d 161, 167 (5th Cir. 1996) ("The constitutionally guaranteed right to a speedy trial applies to sentencing."). This was not a universally accepted approach, with at least one other court of appeals concluding "that the Speedy Trial Clause of the Sixth Amendment . . . does not apply to sentencing proceedings." *United States v. Ray*, 578 F.3d 184, 198–99 (2d Cir. 2009). In 2016, the Supreme Court resolved the question in *Betterman v. Montana*, holding that the Speedy Trial Clause "does not apply to delayed sentencing." 578 U.S. 437, 440–41 (2016). Our past precedent to the contrary was thus abrogated by *Betterman*, and it is

6

now settled that the Sixth Amendment's speedy trial guarantee has no currency in the sentencing context.[4]

Even so, the Supreme Court explained that "due process serves as a backstop against exorbitant delay . . . [and] [a]fter conviction, a defendant's due process right to liberty, while diminished, is still present." *Id.* at 448. By virtue of the Due Process Clauses of the Fifth and Fourteenth Amendments, defendants retain an interest in "fundamentally fair" sentencing proceedings. *Id.* But because the petitioner in *Betterman* did not advance a due process claim, the Court declined to answer how such a claim should be analyzed. *Id.* And this court has likewise not yet articulated a framework for analyzing sentencing delays under the Due Process Clause since *Betterman*.

Kidd asks us to apply the same balancing test that the Supreme Court articulated for speedy-trial claims in *Barker v. Wingo*. 407 U.S. 514, 530 (1972). That test considers four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* Before *Betterman*, this court used the *Barker* factors when analyzing sentencing-delay claims under the Sixth Amendment, *see, e.g.*, *Abou-Kassem*, 78 F.3d at 167, but many of the concerns related to a delayed trial do not arise in the sentencing-delay context. For example, harms caused by an "unreasonable delay between formal accusation and trial" include "oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence." *Doggett v. United States*, 505 U.S. 647, 654 (1992) (cleaned up) (citing *Barker*, 407 U.S. at 532). But

---

[4] Kidd initially moved to dismiss for violation of his constitutional right to a speedy trial. When the Government correctly pointed out that *Betterman* foreclosed Kidd's Sixth Amendment argument, Kidd instead asked that the district court assess the delay under the Fifth Amendment's Due Process Clause.

between conviction and sentencing, "[t]here exists . . . no concern over oppressive incarceration before trial, anxiety over public accusation before trial, or any impairment [of] the petitioner's ability to defend himself." *Ray*, 578 F.3d at 197 (internal quotation marks omitted) (citing *Brooks v. United States*, 423 F.2d 1149, 1152–53 (8th Cir. 1970)).

*Betterman* itself provides some direction. While declining to prejudge how a sentencing-delay claim might fare couched as a due process claim, the Supreme Court suggested that "[r]elevant considerations may include the length of and reasons for delay, the defendant's diligence in requesting expeditious sentencing, and prejudice." 578 U.S. at 448 n.12. These considerations are not dissimilar from those that some courts of appeals had utilized pre-*Betterman* based on *United States v. Lovasco*, in which the Supreme Court examined undue delay before indictment as a due process claim. 431 U.S. 783, 790 (1977); *see, e.g.*, *Ray*, 578 F.3d at 199; *United States v. Sanders*, 452 F.3d 572, 580 (6th Cir. 2006). Those courts crafted a two-step test, weighing: (1) reasons for the delay and (2) prejudice to the accused. *See Ray*, 578 F.3d at 199.

Though *Barker*, *Betterman*, and cases like *Ray* articulate a similar set of considerations, we follow the Supreme Court's guidance in *Betterman* and analyze Kidd's due process claim under the Court's three suggested considerations: (1) "length of and reasons for delay," (2) "the defendant's diligence in requesting expeditious sentencing," and (3) "prejudice." 578 U.S. at 448 n.12. These factors best capture the concerns that arise in the context of sentencing delay. By the same token, though this test facially resembles the *Barker* factors, *see* 407 U.S. at 530 ("[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice"), analyzing a sentencing-delay claim through the lens of due process differs from a Sixth Amendment inquiry.

The most crucial difference is that "proof of prejudice is generally a necessary but not sufficient element of a due process claim." *Lovasco*, 431 U.S. at 790. And "[t]he law is well settled that it is actual prejudice, not possible or presumed prejudice, which is required to support a due process claim." *United States v. Beszborn*, 21 F.3d 62, 66 (5th Cir. 1994); *cf. Adams v. City of Harahan*, 95 F.4th 908, 913 (5th Cir.) ("The Fourteenth Amendment's Due Process Clause protects against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005))), *cert. denied*, No. 24-102, 2024 WL 4427225 (U.S. Oct. 7, 2024) (mem.). On the other hand, a defendant's showing of prejudice does not automatically establish a due process violation. "[T]he due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *Lovasco*, 431 U.S. at 790.

Mindful of these principles, we address Kidd's due process claim under *Betterman*'s suggested test.

**1.**

We start with the length of and reason for the delay. Of course, "[t]he court must impose sentence without unnecessary delay." FED. R. CRIM. P. 32(b)(1). And the length of the delay here—sixteen years—is egregious. But an inordinate delay in itself cannot show a due process violation. *See Ray*, 578 F.3d at 201 ("The delay of fifteen years between our order remanding this case for resentencing and the time when [the defendant] was resentenced is, without doubt, extraordinary—[but] that does not alone mandate [vacatur of the sentence]."); *cf. Barker*, 407 U.S. at 523 (refusing to hold that the defendant must be tried within a "specified time period").

As for the reason for the delay, there is plenty of blame to go around. The Government failed to notify the district court of the need promptly to

schedule a resentencing hearing. Kidd's lawyers also failed to request a hearing, and "[t]o the extent [Kidd] seeks . . . to have [his] conviction vacated and the indictment dismissed, [his] failure, or [his] attorney's failure, to seek more prompt sentencing weighs heavily against [him]." *Ray*, 578 F.3d at 200 (citing *Vermont v. Brillon*, 556 U.S. 81, 90–91 (2009)). Regardless, the district court too remained unaware of the lapse, even after Kidd asked for "clarification" of his sentence in 2012 and 2021.

Still, "the ultimate responsibility for such circumstances must rest with the [G]overnment rather than with the defendant." *Brillon*, 556 U.S. at 90 (quoting *Barker*, 407 U.S. at 531); *see Ray*, 578 F.3d at 200. Granted, there are mitigating considerations that favor the Government: The delay was not "an intentional measure in order to gain a technical advantage." *United States v. Crouch*, 84 F.3d 1497, 1508 (5th Cir. 1996) (quoting *United States v. Willis*, 583 F.2d 203, 207 (5th Cir. 1978)). Rather, it was due to a "more neutral reason such as negligence . . . [which] should be weighted less heavily." *Barker*, 407 U.S. at 531. And Kidd concedes fault for the delay that occurred in 2023 due to his hospitalization and conflicts with his attorneys— though that interval of a few months is a pittance of the sixteen-year lapse at issue. On balance, this factor weighs in favor of Kidd.

**2.**

Our weighing of the second factor—the defendant's diligence in requesting expeditious sentencing—is somewhat hindered because Kidd was apparently not aware of the need for resentencing. To his credit, Kidd actively engaged with his federal sentence, asking on several occasions that the district court set his 2007 sentence to run concurrently with his state

sentences.[5] Even then, Kidd's unawareness, ostensibly caused by his lawyers' failure to inform him of this court's initial remand, does not excuse his failure to request a hearing. To the extent this factor weighs against Kidd, we are hesitant to weigh any negligence on the part of Kidd or his lawyers too heavily in this instance.

**3.**

The third factor, prejudice to the defendant, decisively weighs against Kidd. That is because he cannot plausibly show that he is worse off now than he would have been had he been timely resentenced. This dooms his due process claim. *See Lovasco*, 431 U.S. at 790; *Beszborn*, 21 F.3d at 66.

First, as the district court found, the resentencing delay did not result in any "dead time," a typical result of a lengthy pretrial incarceration. *See Barker*, 407 U.S. at 532–33 ("The time spent in jail [during pretrial incarceration] is simply dead time."). Kidd thus suffered no loss in liberty. He was in state custody for unrelated state sentences until 2021. Thereafter, BOP gave Kidd credit for the time he served between his transfer to federal custody in 2021 and the December 2023 resentencing hearing. And during the resentencing hearing, the district judge even stated he would have granted Kidd additional credit "had there been dead time present here[,] . . . [but] [t]here wasn't." Kidd therefore never served any uncredited "dead time" due to the delay, long as it was.

---

[5] In 2012, when his first state sentence expired, Kidd moved to be transferred to federal custody to serve his federal sentence. The district court construed Kidd's motion as a request for relief under 28 U.S.C. § 2241 and denied his motion. In 2021, Kidd again sought "Sentencing Clarification and Special Consideration," asking for the 2007 federal sentence to run concurrently with his ongoing state sentence. The district court construed that request as a motion for compassionate release and denied it.

Second, Kidd likely did not receive a longer federal sentence because of the delay. In 2007, he was initially sentenced to 60 months. In 2023, the district court resentenced him to 60 months. If there had been a timely resentencing hearing, it seems apparent that Kidd would not have received a shorter sentence. As discussed, the district court awarded an offense level reduction for acceptance of responsibility during Kidd's initial sentencing, under the mistaken impression that the reduction made no difference in the Guidelines range. This court remanded for the district court to rectify that error. Had the district court engaged with the merits of the Government's objection to the offense level reduction, it likely would not have awarded the reduction. *See infra* III.B.1. Instead, it is more likely that the district court, which had initially sentenced Kidd to the statutory maximum, would have adhered to that sentence after remand—just as the district court did, after denying any reduction in offense level, in 2023.

Third, Kidd retained the incentive to challenge his sentence. A defendant may lack such incentive if he has already served his sentence. *See United States v. Washington*, 626 F. App'x 485, 488 (5th Cir. 2015) (per curiam), *as revised* (Feb. 1, 2016) ("[A]t the time of re-sentencing, [the defendant] already had served his entire forty-six-month sentence . . . . The delay in this case thus . . . deprived [the defendant] of any incentive to offer arguments in support of a lesser term of incarceration . . . ."). Because Kidd had only served a portion of the 2007 federal sentence, he did not suffer the kind of prejudice that this court observed in *Washington*. The district court was also fully able to consider Kidd's acceptance-of-responsibility argument despite the delay. And the district court had the chance to decide whether the newly imposed federal sentence would run consecutively or concurrently with Kidd's state sentences, determining that it would run consecutively. Thus, Kidd had the same opportunity to litigate his new sentence that he would have had if there had been a timely resentencing hearing.

Kidd asserts that he suffered great anxiety due to the uncertainty regarding the 2007 sentence. But the resentencing delay could not have been the source of any anxiety because Kidd was unaware that he even needed to be resentenced until April 2023. And given the number of prison sentences that Kidd accumulated, it is unlikely that the 2007 federal sentence specifically caused Kidd anxiety during his incarceration.

Distilled down, despite the egregiousness of the sixteen-year delay, and affording the benefit of the doubt as to his diligence in requesting sentencing modifications, Kidd's due process claim fails because he is unable to show "actual prejudice, . . . which is required to support a due process claim." *Beszborn*, 21 F.3d at 66.

## B.

Because we conclude Kidd has suffered no cognizable due process injury, we address his alternative challenges to his sentence, namely that the district court:  (1) should have awarded an offense level reduction for acceptance of responsibility and (2) neglected to weigh relevant considerations when it resentenced him to 60 months. Both arguments fail.

## 1.

The district court initially granted the acceptance-of-responsibility reduction under U.S.S.G. § 3E1.1, but the court denied it at the resentencing hearing. "[O]nce an issue is remanded for resentencing, all new matter relevant to that issue appealed, reversed, and remanded, may be taken into consideration by the resentencing court." *United States v. Carales-Villalta*, 617 F.3d 342, 345 (5th Cir. 2010) (quoting *United States v. Marmolejo*, 139 F.3d 528, 530 (5th Cir. 1998)). Appealing his new sentence, Kidd must show that the district court's denial of a reduction for acceptance of responsibility was "without foundation," an even more deferential standard than our usual review for clear error. *Lord*, 915 F.3d at 1017.

Kidd argues that he clearly demonstrated acceptance of responsibility by entering a guilty plea, admitting to the offense conduct, and admitting all relevant conduct for which he was accountable. But he fails to show that the district court's denial of an offense level reduction was without foundation.

When the district court awarded the reduction in 2007, over the Government's objection and despite an addendum to the PSR recommending denial, the court did so largely based on its mistaken assumption that the reduction would not make a difference in the Guidelines range. On remand, the district court weighed the merits of the issue, considering Kidd's arguments and the Government's objection to the reduction, and it denied relief. In particular, the court considered the fact that Kidd mailed threatening letters to prosecutors in Wisconsin and Kentucky in March 2007—after pleading guilty in this case. In doing so, the district court faithfully followed the 2023 Sentencing Guidelines, which includes "voluntary termination or withdrawal from criminal conduct or associations" as an appropriate consideration in determining whether a defendant qualifies for the reduction. U.S.S.G. § 3E1.1 cmt. n.1. Because Kidd plainly did not cease the criminal conduct at issue (sending threatening mails) after he pled guilty, the district court did not err in denying the offense level reduction.

## 2.

Likewise, the district court did not abuse its discretion in weighing the relevant factors to resentence Kidd to 60 months in prison. *See* U.S.S.G. § 1B1.4 (2023) ("In determining the sentence to impose within the [G]uideline range . . . the court may consider, without limitation, any information concerning the background, character and conduct of the defendant . . . ."). "[C]ourts of appeals must review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a

deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). And this court "presume[s] sentences within or below the calculated [G]uidelines range are reasonable." *United States v. Simpson*, 796 F.3d 548, 557 (5th Cir. 2015). Kidd's 60-month sentence on remand was within the properly calculated Guidelines range—51 to 60 months. It is therefore presumptively reasonable.

To rebut the presumption of reasonableness, Kidd must show that the sentence "(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *Simpson*, 796 F.3d at 558 (quoting *United States v. Warren*, 720 F.3d 321, 332 (5th Cir. 2013)). Further, "[i]f the sentencing judge exercises her discretion to impose a sentence within a properly calculated Guideline range . . . we will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines." *United States v. Alvarado*, 691 F.3d 592, 596 (5th Cir. 2012) (quoting *United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006)).

Kidd contends that the district court did not give enough weight to the trauma he endured while imprisoned leading up to the 2005 offense of conviction. Kidd explains that he did not send the threatening letters at issue as a "get out of jail free card." Rather, he maintains his crime was an act of desperation resulting from the brutal rape and abuse he allegedly endured at the hands of a prison guard and another inmate. He avers that he thought that writing a threatening letter to a federal judge would get him transferred to federal custody, where he believed he would be safer. The transcript from the resentencing hearing, however, clearly shows that the district court took into account the mitigating factors Kidd proffered.

No. 23-11265

Kidd also argues that the district court did not consider the amount of time that elapsed between the 2007 offense and the 2023 sentence. Because his mailing of threatening communications occurred more than 20 years ago, Kidd contends, a 60-month sentence is far longer than necessary to provide just punishment for the offense and to protect the public. But since his 2007 conviction, Kidd has accrued additional state and federal sentences. And during his incarceration, Kidd also exhibited numerous behavioral problems, including "self-mutilation, two instances of inappropriate sexual conduct, refusing to work, mail abuse, and assaulting a cellmate." "[W]hen a defendant's sentence is set aside on appeal, the district court at resentencing can (and in many cases, must) consider the defendant's conduct and changes in the Federal Sentencing Guidelines since the original sentencing." *Concepcion v. United States*, 597 U.S. 481, 486 (2022). Kidd fails to show that the district court did not properly consider relevant factors when it resentenced Kidd to 60 months—the same length as Kidd's original sentence. In short, we discern no abuse of discretion in the district court's new sentence.

## IV.

Courts have an obligation promptly to sentence those who have been convicted. *See* FED. R. CRIM. P. 32(b)(1). Here, a man's fate—his liberty—was in limbo for sixteen years because his case fell through the cracks after remand from this court. As we have said, that delay was egregious. But the sixteen-year delay in Kidd's resentencing, given the facts of this case, did not violate his due process rights because he suffered no prejudice as a result of the delay. Otherwise, the new 60-month sentence imposed by the district court was properly calculated and is substantively reasonable. The district court's judgment is accordingly

AFFIRMED.